ELECTRONICALLY FILED
Superior Court of California
County of Ventura
02/24/2025
Brenda L. McCormick
Executive Officer and Clerk
By: _____ Deputy Clerk
Joan Foster

Ventura Superior Court transmitted through eFiling 02/24/2025 11:30:23 PM

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
David W. Reid, Bar No. 267382
dreid@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF VENTURA

| | |
|---|---|
| SILVIA GARCIA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FEATURE LLC, a Nevada company, d/b/a WWW.FEATURE.COM,<br><br>Defendant. | Case No. 2025CUMT039169<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA INVASION OF PRIVACY ACT** |

CLASS ACTION COMPLAINT

# INTRODUCTION

1. Californians increasingly conduct their lives and activities over the Internet, sharing often sensitive personal information with companies by using company websites rather than landline telephones.

2. Defendant created its own online presence at *feature.com* (the "Website") to communicate with potential customers, encouraging engagement with this electronic medium – Defendant's Website -- as an alternative to the telephonic or in-person interaction. Defendant did this to enable potential customers to obtain information from and about Defendant's insurance products, and to enable Defendant to elicit information from potential customers about their specific needs and desires.

3. Defendant well understands that its Website is a means to communicate privately with potential customers – a consumer expectation that is perfectly reasonable. *See* https://privacy.feature.com/#how-we-disclose-information (last accessed February 2025).

4. However, Defendant aids a third party (Meta Systems, Inc., owner of Facebook and Instagram) to surveil every detail of its interactions with visitors to its Website, thereby allowing Meta to create detailed portraits of Website visitors' interests, needs, and desires and bombard them with advertising.[1]

5. In short, Defendant falsely promised Website visitors that it would protect their privacy, but then secretly monetized their personal information by enabling Meta to spy on those visitors, surveil their journey across the web, track their location and lifestyle habits, and bombard them with targeted advertising. Rather than candidly disclose this arrangement, Defendant explicitly and implicitly assured Website visitors that their identities and privacy would be protected. In short, Defendant lied.

6. Plaintiff visited Defendant's website several times, most recently in mid-2024. Without Plaintiff's or class members' knowledge or consent, Defendant deployed Meta's de-anonymization process to identify Plaintiff using electronic impulses generated from Plaintiff's device, as further described herein. Defendant's installation of the Meta tracing process violates California's Trap and Trace Law, codified at California Penal Code § 638.51.

---

[1] While the allegations in this Complaint focus on Meta, the website plays host to a cornucopia of other invasive tracking and surveillance products, details of which will be explored in discovery.

## JURISDICTION AND VENUE

7. As a Court of general jurisdiction, This Court has jurisdiction over all matters presented to it per the mandates of the California Constitution.

8. Venue is proper in this County because some of the class members' claims arose in this county.

9. Defendant is subject to jurisdiction under California's "long-arm" statute found at California Code of Civil Procedure Section 410.10 because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States."

## PARTIES

10. Plaintiff is a resident and citizen of California.

11. Defendant is an entity that sells footwear, apparel, and accessories.

## FACTUAL ALLEGATIONS

**Defendant's Website Spies on Visitors.**

12. Defendant operates the Website. Defendant has installed on its Website a spyware pixel created by Meta in order to identify website visitors (the "Meta Spyware").

13. The Meta Spyware acts via a process known as "fingerprinting." Put simply, the Meta Spyware collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data Meta has acquired and accumulated about hundreds of millions of Americans.

14. The Meta Spyware gathers device and browser information, geographic information, referral tracking, and url tracking by running code or "scripts" on the Website to send user details to Meta.

15. One leading defense law firm specializing in privacy litigation summarizes the Meta Pixel this way:

> *"**The Meta Pixel is a piece of code embedded in the HTML code of a website. When a user visits the website, the Pixel sends Meta information about the user's actions on the website. The Pixel is customizable, allowing the website to track specific user characteristics by changing certain variables in the code. Some Pixel parameters allow Meta to link a user's***

*online actions with their offline purchases in physical stores. . . .Think of the Pixel as a door installed in the website, with Meta on one side of the door and the user on the other. Meta can gather data and see how the user interacts with the website: if they enter their email, if they click on a link, if they add something to their cart. Meta and the website can use this data to better target ads.*"

*See* https://www.kslaw.com/news-and-insights/the-meta-pixel-an-open-door-to-sensitive-data-and-data-privacy-suits (last accessed December 2024). The preceding summary is shown visually as follows:



16. Plaintiff is both (1) genuinely interested in the goods, services, and information available on Defendant's website, and (2) a consumer privacy advocate who works as a "tester" to ensure that companies abide by the privacy obligations imposed by California law. As the Ninth Circuit recently made exceptionally clear that it is "necessary and desirable for committed individuals to bring serial litigation" to enforce and advance consumer protection statutes, and that Courts must not make any impermissible credibility or standing inferences against them. *Langer v. Kiser*, 57 F.4th 1085, 1095 (9th Cir. 2023).

17. As shown by the image below identifying the Meta tracking scripts operating on Defendant's website, the Meta Spyware (1) begins to collect information the moment a user lands on the Website before any pop-up or cookie banner advises users of the invasion or seeks their consent;

and (2) requests and transmits other identifying personal information to Meta that allows Meta to link a user's behavior on Defendant's website to the visitor's social media accounts:



**The Meta Spyware is a Trap and Trace Device.**

18. California Penal Code § 638.50(c). California law defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." California Penal Code § 638.50(c).

19. The Meta pixel allows Defendant to link to a visitors Facebook account by placing a small piece of code on the website that tracks visitor activity and reports it to Meta, thereby allowing Meta and its platforms (like Facebook and Instagram) to identify and match those visitors to their Facebook and Instagram accounts, enabling Defendant to target them with ads based on their actions on the website.

20.     The Meta Spyware is a process to identify the source of electronic communication by capturing incoming electronic impulses and identifying dialing, routing, addressing, and signaling information generated by users, who are never informed that the website is collaborating with the Chinese government to obtain their phone number and other identifying information.

21.     The Meta Spyware is "reasonably likely" to identify the source of incoming electronic impulses. In fact, it is designed solely to meet this objective.

22.     Defendant did not obtain Plaintiff's express or implied consent to be subjected to data sharing with Meta for the purposes of fingerprinting and de-anonymization.

23.     CIPA imposes civil liability and statutory penalties for the installation of trap and trace software without a court order. California Penal Code § 637.2; s*ee also Shah v. Fandom, Inc.*, 2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024).

24.     Defendant did not obtain Plaintiff's or class members' express or implied consent to be subjected to data sharing with Meta for the purposes of fingerprinting and de-anonymization.

## CLASS ALLEGATIONS

25.     Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> **All California citizens who visited Defendant's website while physically located in California and whose personal information was shared with Meta or other third parties by Defendant without their effective and informed prior consent.**

26.     NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be at least 50. The exact identities of Class Members may be ascertained by the records maintained by Defendant.

27.     COMMONALITY: Common questions of fact and law exist as to all Class Members, and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

CLASS ACTION COMPLAINT

     a.    Whether Defendant shared class members' personal information with Meta or other third parties;

     b.    Whether Defendant obtain effective and informed consent to do so;

     c.    Whether Plaintiff and Class Members are entitled to statutory penalties; and

     d.    Whether Class Members are entitled to injunctive relief.

28. <u>TYPICALITY</u>: As a person who visited Defendant's Website and whose personal information was shared by Defendant, Plaintiff is asserting claims that are typical of the Class.

29. <u>ADEQUACY</u>: Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

30. <u>SUPERIORITY</u>: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is impracticable and inefficient. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

31. <u>AMOUNT IN CONTROVERSY</u>: Inclusive of all class member claims, Plaintiff estimates that the amount in controversy is approximately $3,000,000. The precise amount in controversy can be determined from Defendant's records.

## CAUSE OF ACTION

### Violations of the California Trap and Trace Law

### Cal. Penal Code § 638.51

32. California's Trap and Trace Law is part of the California Invasion of Privacy Act ("CIPA") codified at Cal. Penal Code 630, *et. seq*.

33. CIPA was enacted to curb "the invasion of privacy resulting from the continual and increasing use of" certain technologies determined to pose "a serious threat to the free exercise of personal liberties." CIPA extends civil liability for various means of surveillance using technology, including the installation of a trap and trace device.

34. A "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." California Penal Code § 638.50(c).

35. California Penal Code §638.51 provides that "a person may not install or use…a trap and trace device without first obtaining a court order…" § 638.51(a).

36. Defendant uses a trap and trace process on its Website by deploying the Meta Spyware on its Website, because the software is designed to capture the phone number, email, routing, addressing and other signaling information of website visitors. As such, the Meta Spyware is solely to identify the source of the incoming electronic and wire communications to the Website.

37. Defendant did not obtain consent from Plaintiff and class members before using trap and trace technology to identify users of its Website, and has violated Section 638.51.

38. CIPA imposes civil liability and statutory penalties for violations of §638.51.

39. Therefore, Plaintiff and class members are entitled to the relief set forth below.

## **PRAYER**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order certifying the class and making all appropriate class management orders;
2. Statutory damages pursuant to CIPA;
3. Reasonable attorneys' fees and costs; and
4. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

Dated: February 24, 2025         PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott. J. Ferrell
Attorneys for Plaintiff